## Steele v. Todd et al., Appellants.

*Oil well—Damages—Indemnity—Injury to water—Bond—Evidence.*

The condition of a bond was to indemnify and save harmless the obligee from all damages which she might sustain by reason of the drilling and operating of an oil well by the obligors. In an action on the bond plaintiff proved that the water wells on her property were injured by the drilling of the oil well. The court charged that if the defendants did not do something to prevent the streams feeding the water wells from being drained off from the wells, they were guilty of negligence and plaintiff was entitled to recover. *Held*, not to be error.

Argued Nov. 6, 1893. Appeal, No. 199, Oct. T., 1893, by defendants, George A. Todd et al., from judgment of C. P. No. 2, Allegheny Co., July T., 1892, No. 465, on verdict for plaintiff, Annie Steele. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Assumpsit on bond of indemnity. Before WHITE, J.

At the trial it appeared that defendant leased a lot of ground in South Fayette township, fifty by two hundred feet, and drilled an oil well thereon. Plaintiff was the owner of a lot on each side of and contiguous to defendants' lot, and on each of plaintiff's lots was a water well. Plaintiff filed a bill in equity alleging that her property and water wells would be exposed to danger by drilling oil or gas wells on defendants' lot. The court granted a preliminary injunction, which was afterwards dissolved on defendants giving plaintiff a bond, conditioned that they "shall well and truly indemnify and save harmless the said Annie Steele from all damage which may be sustained by her, by reason of the drilling and operating of said well, then this obligation to be void, otherwise to be and remain in full force and virtue."

Plaintiff introduced evidence which tended to show that the drilling of the oil well drained off all the water from the water wells, and caused injury to trees, garden, etc.

The court charged in part as follows:

" Subterranean streams, or percolations of water underneath the surface, ordinarily are not known, it cannot be told where they are, and in the digging of a coal mine, or the sinking of a

well for oil or gas, these subterranean streams may be injured.
Very frequently in mining out coal, a spring of water is de-
stroyed, so sometimes in the sinking of oil wells they may strike
a subterranean stream of water a considerable distance from
a man's property, and in that way a well may be destroyed.
Ordinarily, in those cases, there is no legal damage done, and
the party injured has no remedy.  It is on this principle that a
man has a right, in a lawful manner, to improve his own property,
to do what is necessary on his own property, to enjoy it, or to
enjoy anything lying under the surface, and while engaged in the
lawful enjoyment or improvement of his own property, if an
injury is done unavoidably to a neighbor's property, he is not
liable for any damage.   But he is bound to exercise care.   He
is bound to proceed with proper caution, and if he has reason
to believe he is going to injure another man's property, if he is
going to injure a well on an adjoining lot, he is bound to exer-
cise such care and prudence as will avoid that injury, if it can
be avoided.   Now we have cases where an oil well or a gas well
has been sunk 1500 or 2000 feet deep, and the salt water com-
ing up has mingled with the fresh water above, and in that way
destroyed water wells.   If a man boring a gas or an oil well
knows it is in a locality where salt water may come up, and
mix with the fresh water, he is bound to take such precautions
as not to injure this fresh water by the salt water.   If he can,
by reasonable expenditure, care and caution, avoid that, and
does not do it, he is liable for neglecting to do what he ought
to have done to protect his neighbor.   So he would be liable
equally for draining off a stream that fed a well, if he could
have guarded against it by reasonable care and prudence, and
a reasonable expenditure.

" The question, therefore, in this case is : Did the defendants
exercise the care they should have to have saved them ?   They
knew the plaintiff had two wells, and presumably knew that
they were what we call shallow wells.   One was only eight or
ten feet deep, and the other fifteen feet deep.   At the bottom
of these wells the streams of water came in.   In sinking the
well in this case the defendants put down a wooden casing or
conductor, as it is called ; they put one sixteen or eighteen feet
long, and on the top of that another one about half as long.
That would make it from twenty-four to twenty-seven feet

from the surface down to the bottom of this wooden casing. That was large enough for them to put inside of it and sink down below it iron tubing eight and a quarter inches in diameter. [This wooden casing was below these wells a considerable distance, and in all probability the streams feeding these wells, if the wells were injured in this way, were cut before they got to the bottom of that wooden tubing. Now, did the defendants do anything to prevent the water from these wells percolating down through the ground and wasting away, either down inside of this wooden casing, or down inside of the iron tubing below that, or down so as to be carried off somewhere else?] [1] The defendant, [Mr. Todd, said that they put down this well in the most skillful manner, and to shut off outside water from the surface. That was necessary, he said, in order to bore the well. Was it done so as to prevent the water from these wells or the streams being carried away? That is the question really in this case. Were the defendants guilty of negligence in not doing something that would have prevented the streams feeding these wells from going down in the well along the side of this pipe, or being carried off after being taken some distance below the bottom of these wells? There I think is really the point in this case. Was there negligence in that respect? I cannot see that it matters much what was done one hundred or five hundred or a thousand feet below the surface. If there was negligence in this respect, then the plaintiff is entitled to recover damages for the loss of these wells."] [2]

Verdict and judgment for plaintiff for $300. Defendants appealed.

*Errors assigned* were (1, 2) instructions, quoting them.

*John C. Haymaker*, for appellants, cited: Haldeman v. Bruckhart, 45 Pa. 514; Wheatley v. Baugh, 25 Pa. 528; Lybe's Ap., 106 Pa. 626.

*J. W. Kinnear*, for appellee, not heard, cited: Davenport v. Wright, 51 Pa. 292; Hooksett v. Concord R. R., 38 N. H. 242; Burkholder v. Plank, 69 Pa. 233; Collins v. Chartiers Gas Co., 131 Pa. 159.

PER CURIAM, November 14, 1893:

This action is on the joint and several penal bond of the de-fendants to the plaintiff, conditioned that they "shall well and truly indemnify and save harmless the said Annie Steele from all damage which may be sustained by her, by reason of the drilling and operating of said well, then this obligation to be void, otherwise to be and remain in full force and virtue." The plaintiff alleged, and introduced testimony tending to prove, that she did sustain damage by reason of the drilling and oper-ation of the oil well referred to in the bond. This necessarily presented questions of fact for the consideration of the jury, and the case was accordingly submitted to them by the learned trial judge in a charge that appears to be free from error. There is nothing in either of the excerpts from the charge, recited in the first and second specifications, of which defendant has just reason to complain.

Judgment affirmed.